THE MANUFACTURERS' BANK OF MACON, plaintiff in error, vs. HENRY J. LAMAR, defendant in error.

1. Where a holder of bank bills, issued before June, 1865, gives them in regularly at what he swears, on the trial, he was willing to sell them at, and pays the taxes due on that valuation, there being no contradictory evidence of the value of the bills, it is a sufficient compliance with the Relief Act of 1870.

2. A State bank, not specially authorized by its charter to do so, could not, in 1862, issue any of its bills, intended to be used as money, redeemable otherwise than with gold or silver coin. Where it did issue bills at that date, in the usual form, it is inadmissible in a suit on them by a *bona fide* holder, who did not receive them from the bank, but purchased them from others, to prove that they were intended by the bank to be payable in Confederate currency, and were so understood by the community in which the bank was located. The Ordinance of 1865 does not apply to such contracts.

Relief Act of 1870. Tax-affidavit. Bank bills. *Bona fide* holder. Before Judge COLE. Bibb Superior Court. October Adjourned Term, 1871.

Henry J. Lamar brought suit against the Manufacturers' Bank of Macon on six hundred and thirteen bank notes, amounting, in the aggregate, to $1,904.

The defendant pleaded, 1st. The Relief Act of 1870, in reference to set-off and recoupment. 2d. That $1,693 of the notes sued on were issued on a Confederate bond, with the understanding that they were redeemable in Confederate treasury notes, and that, therefore, they should be scaled. 3d. That the notes sued on, dated in 1862, being understood to be redeemable in Confederate treasury notes and not in specie,

were illegal and void as against the stockholders of said bank. 4th. That said notes were purchased by the plaintiff at about the value of Confederate money, and for much less than their face value; that said bank is insolvent; that, therefore, plaintiff is only entitled to recover from said bank the amount paid for said bills. 5th. That said bank suspended payment in the fall of 1860, and when reorganized, in 1862, it was on a Confederate basis, its assets being Confederate currency and Confederate States securities, payable in said currency; that this was the condition of the bank when the notes, dated in 1862, were issued; that plaintiff, by reason of his residence and doing businesss in the city of Macon, received said notes sued on with full knowledge of the said facts; that, therefore, the stockholders are not liable on said notes, and if liable, only for the value of said notes in Confederate currency.

Plaintiff testified as to the payment of taxes on the notes sued on, as follows: Witness has been the holder of some of the bills sued on since 1860; has purchased most of them since the war; witness has paid taxes on all the bills sued on regularly since he has owned them; does not remember exactly what he estimated them at; thinks it was about forty cents on the dollar; witness always considered the defendant solvent and liable and able to redeem its bills in good currency; witness estimated the bills at what he believed them to be worth; was always willing to take for the bills the amount for which he gave them in for taxes; has never failed to give in and pay taxes since witness has lived in Bibb county.

The jury returned a verdict for the plaintiff for the sum of $1,904, with interest from January 1st, 1870.

The defendant moved for a new trial upon the following, among other grounds, to-wit:

1st. Because said verdict, if it is held to include a finding that plaintiff had duly paid all legal taxes on the bills sued on, is strongly and decidedly against the weight of evidence, and is without any evidence to support it.

2d. Because the Court erred in refusing to allow William A. Cherry, the president of defendant, to testify that the statements in the plea as to the insolvency of said bank and the alleged illegal issue of the bills dated in 1862, were true.

3d. Because the Court erred in refusing to allow said W. A. Cherry to answer the following questions propounded by defendant's counsel : Whether said bank was reorganized in 1862, prior to the issue of the bills sued on, bearing date in that year? if so, whether it was on a Confederate or specie basis ? Whether said bank was solvent or insolvent when the bills dated in 1862 were issued ? Whether there were any specie paying funds belonging to said bank when said bills were issued ? In what currency the bills issued in 1862 were intended by the officers of said bank, and universally understood by the community, to be paid in ? Whether said bills dated in 1862 were issued with the understanding by the bank, the community and the bill-holders, that they were payable in Confederate money, specie, or what ? Whether said bank is now insolvent or solvent, and to state if he knew what plaintiff paid for the bills sued on ?

The motion for a new trial was overruled by the Court and plaintiff in error excepted and assigns said ruling as error.

LANIER & ANDERSON, for plaintiff in error.

A. O. BACON ; THOMAS J. SIMMONS, for defendant.

MONTGOMERY, Judge.

1. The fourth section of the Relief Act of 1870 does not require the jury to return a separate finding upon the question of payment of taxes by the plaintiff, unless they are of opinion that the taxes have not been paid, and in that case it is required, because if the plaintiff has not paid the taxes the defendant is entitled to a dismissal of the suit, not to a verdict. The proof of the payment of taxes by the plaintiff is one of the burdens cast upon him by the law to entitle

him to a recovery, and is necessarily found in his favor by a general verdict for him. We think the proof on this point warranted the verdict.

2. It is not pretended in this case that there is any special authorization to the bank by the Legislature to issue bills in 1862 redeemable in anything but gold and silver coin. The law upon this subject is positive, that no bank shall issue bills " payable or redeemable in any other manner or in any other thing than with gold and silver coin." If it does, it is a misdemeanor on the part of its officers : Act of 1837, sections 2 and 3 ; T. R. R. Cobb, 103 ; Act of 1838, section 4 ; *Ibid.*, 104. The Code is to the same effect : section 1478, par. 4. The Acts of 1837 and 1838 were of force at the time the bills of the bank were issued in 1862. A purchaser had the right to presume that the bank intended to comply with the law, to say nothing of introducing parol evidence to prove that a written contract meant what the law said positively it should not mean, and which, on its face, purports to comply with the law as it existed at the time. We do not think the Ordinance of 1865 was intended to go so far as to permit parties to give in evidence an illegal intention on their part to relieve themselves from liability. No man shall take advantage of his own wrong.

Judgment affirmed.